IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI A. SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 18-619 |
| v. | ) | |
| | ) | Hon. Nora Barry Fischer |
| PNC BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Lori A. Scott ("Plaintiff") brings this action alleging that Defendant PNC Bank, N.A. ("Defendant" or "PNC") wrongfully interfered with and delayed her receipt of the proceeds of her husband's life insurance policy. Her Amended Complaint includes three causes of action: (1) conversion; (2) fraud; and (3) breach of the covenant of good faith and fair dealing. The Court has carefully considered the parties' submissions (Docket Nos. 11, 12, 13, 14), and, for the reasons stated more fully herein, the Defendant's motion to dismiss (Docket No. [11]) is GRANTED.

**I.   STATEMENT OF FACTS**

This matter arises from an alleged dispute regarding a life insurance policy. The following pertinent facts are set forth in the Amended Complaint, which the Court will accept as true for the sole purpose of deciding the pending motion. *See Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014).

Plaintiff's husband, Harry W. Scott, Jr. ("the decedent"), died on August 2, 2017. (Docket No. 9 at ¶ 6). Plaintiff is the sole heir to the decedent's estate. (*Id.*). At the time of his death, the decedent was the owner of Transamerica Life Insurance Policy No. 41951321 ("the Policy"). (*Id.*). The Policy was issued in 2001 with a face amount of $1,000,000.00. (*Id.*). The Policy named Plaintiff as the sole beneficiary and included an assignment in favor of RBC Centura Bank. (*Id.*).

As required by RBC Centura Bank, the decedent purchased the Policy in connection with a loan transaction that was paid off and satisfied in 2004, effectively negating the assignment of the Policy. (*Id.* at ¶ 7). Steps to eliminate and cancel the assignment of the Policy were overlooked by the decedent and RBC Centura Bank. (*Id.*). After 2004, the decedent had no loans or other financial dealings with RBC Centura Bank. (*Id.* at ¶ 8).

Defendant acquired RBC Centura Bank in March 2012. (*Id.* at ¶ 9). Following the decedent's death, Plaintiff filed a claim for the Policy's proceeds on August 30, 2017, and was advised by Transamerica of the RBC Centura Bank assignment. (*Id.* at ¶ 11). Plaintiff requested that Defendant notify Transamerica that it had no interest in the Policy and that the RBC Centura Bank assignment became a nullity in 2004. (*Id.*). Defendant refused and asserted an interest in the Policy as a successor to RBC Centura Bank. (*Id.* at ¶ 12).

In March 2017, the decedent took out loans with Defendant for his business, AccuDoc Solutions, Inc. ("AccuDoc"). (*Id.* at ¶¶ 10, 13). By virtue of her status as the sole heir to the decedent's estate, Plaintiff has full beneficial and eventual legal ownership in AccuDoc. (*Id.* at ¶ 14). Following negotiations, Plaintiff and Defendant reached a contract agreement whereby the Policy's proceeds would be released to Plaintiff following her contribution of $500,000.00 to AccuDoc, which would be used to immediately pay off Defendant's purchasing card credit line. (*Id.* at ¶¶ 15-16). The agreement also provided that Plaintiff's contribution would be deemed to be a note payable from AccuDoc to Plaintiff, to be subordinate to AccuDoc's debt to Defendant. (*Id.* at ¶ 16).

On January 31, 2018, Plaintiff loaned $500,000.00 to AccuDoc by wire transfer, which AccuDoc used to pay off Defendant's purchasing card credit line in the amount of $497,523.15. (*Id.* at ¶ 17). Plaintiff's counsel informed Defendant's representative of the same and e-mailed

copies of the signed six documents that Defendant had previously requested. (*Id.*). Thereafter, Defendant's representative e-mailed a subordination agreement, unlimited in amount, to Plaintiff's counsel. (*Id.* at ¶ 18). Plaintiff's counsel telephoned Defendant's representative to advise that the parties' agreement limited a subordination agreement to the $500,000.00 that Plaintiff had loaned to AccuDoc. (*Id.* at ¶¶ 18-19). In a subsequent e-mail, Defendant's representative described the subordination agreement as a "standard" document. (*Id.* at ¶ 19). In response, Plaintiff's counsel requested that the subordination agreement be modified to reflect the agreement between the parties. (*Id.*). Defendant's representative replied, stating that "[u]pon receipt of the executed subordination and original docs, we will issue the letter to Transamerica." (*Id.* at ¶ 20). Plaintiff's counsel then e-mailed a copy of a complaint, threatening to file an action unless Defendant honored the parties' agreement to limit the extent of the subordination agreement and to notify Transamerica to release the Policy's proceeds to Plaintiff. (*Id.* at ¶ 21).

On February 1, 2018, Plaintiff's counsel, Defendant's representative, and Defendant's counsel participated in a teleconference, at which time Defendant did not offer to honor the agreement between the parties. (*Id.* at ¶ 22). In the interim, Defendant's representative informed Transamerica by e-mail that it was "withdrawing its claim to the [life insurance] benefits and ha[d] no objection to payment of all benefit proceeds directly to [Plaintiff]." (*Id.* at ¶ 23). Following the teleconference, Defendant's counsel e-mailed Plaintiff's counsel a revised subordination agreement that reduced the scope of the subordination agreement as originally agreed but added language that would release Defendant from liability for its prior actions. (*Id.* at ¶ 24).

Plaintiff received the Policy's life insurance proceeds from Transamerica on February 9, 2018. (*Id.* at ¶ 25). On February 14, 2018, Defendant's representative e-mailed Plaintiff's counsel and offered to waive Plaintiff's signing of a subordination agreement. (*Id.* at ¶ 26). Plaintiff

alleges that Defendant's conduct in failing to notify Transamerica that it had no interest in the Policy and in attempting to change the terms of the parties' agreement was outrageous, fraudulent, and in bad faith, causing Plaintiff severe emotional distress, loss of opportunity, financial damages, loss of earnings, and damage to her credit standing. (*Id.* at ¶¶ 27-28). Plaintiff asserts claims against Defendant for conversion, fraud, and breach of the covenant of good faith and fair dealing. (*Id.* at ¶¶ 29-47).

Plaintiff filed this action in the Court of Common Pleas of Allegheny County on April 20, 2018. (*Id.*). Defendant removed the action to this Court on May 9, 2018. (Docket No. 1). Defendant filed a Motion to Dismiss Plaintiff's Complaint and supporting briefing on May 30, 2018. (Docket Nos. 5, 7). After Plaintiff filed an Amended Complaint, Defendant filed a second Motion to Dismiss and supporting briefing. (Docket Nos. 9, 11, 12). Plaintiff filed a response in opposition, to which Defendant replied. (Docket Nos. 13, 14). This matter is now ripe for disposition.

## II. **DISCUSSION**

### A. **The Legal Standard**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid*, 740 F.3d at 122 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "Thus, 'only a complaint that states

a plausible claim for relief survives a motion to dismiss.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556-57.

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (quoting *Iqbal*, 556 U.S. at 679).

**B. Conversion (Count I)**

Under Pennsylvania law, the elements of a conversion claim are: (1) the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith; (2) without the owner's consent and (3) without lawful justification. *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 573 (W.D. Pa. 2015); *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). Conversion can be committed in several ways, including: (1) acquiring possession of the chattel with the intent to assert a right to it which is adverse to the owner; (2) transferring the chattel and thereby depriving the owner of control; (3) unreasonably withholding possession of the chattel from one who has the right to it; or (4) misusing or seriously damaging the chattel in defiance of the owner's rights. *Fort Washington Res., Inc. v. Tannen*, 846 F. Supp. 354, 361 (E.D. Pa. 1994) (citing *Norriton East Realty Corp.*, 254 A.2d at 638). In addition, a claim of conversion requires a plaintiff to establish an "immediate right to possession" to the property at issue at the time the conversion is alleged to have occurred. *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994).

Here, pursuant to the assignment, the life insurance proceeds were being "held as collateral security for any and all liabilities of [the decedent] . . . to the Assignee, either now existing or that may hereafter arise in the ordinary course of business." (Docket No. 12-1 at ¶ C).[1] The assignment further provides that the assignee had "[t]he sole right to collect from the insurer the net proceeds of the Policy when it becomes a claim by death." (*Id.* at ¶ A). Given same, Plaintiff cannot

---

[1] Plaintiff argues that the Court should disregard the assignment attached to Defendant's brief because Defendant did not include all operative documents between itself, AccuDoc, and the decedent. (Docket No. 13 at 4-5). Although a district court generally may not consider matters outside of the complaint when ruling on a motion to dismiss, it is well settled that a court may consider any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). There does not appear to be any dispute concerning the authenticity of the assignment. It is therefore appropriate for the Court to consider the same in adjudicating the pending motion to dismiss.

establish that she had possession of the Policy's proceeds or an immediate right to them. To this end, it is well established that "[n]o action for conversion will lie where a defendant is alleged to have refused to return insurance premiums or refused to pay insurance proceeds." *Allstate Prop. & Cas. Ins. Co. v. Vargas*, No. 06-CV-3368, 2006 U.S. Dist. LEXIS 95608, at *12 (E.D. Pa. Dec. 28, 2006); *see also Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp.*, 974 F. Supp. 822, 845 (E.D. Pa. 1997) (explaining that the customer has no immediate right to the possession of money, and therefore no conversion claim, in cases involving loan repayment and the collection of insurance proceeds); *Corporate Plaza Partners, Ltd. v. Am. Employers' Ins. Co.*, No. 95-CV-5234, 1996 U.S. Dist. LEXIS 4637, at *2 (E.D. Pa. Apr. 3, 1996) (granting motion to dismiss an insurance company's conversion claim to retrieve money it voluntarily advanced to an insured because the insurance company "no longer had an immediate right of possession to it"); *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 300-01 (E.D. Pa. 1993) (recognizing that "an action for conversion will not lie where an alleged converter borrowed money, even though he had an intent not to pay back the loan . . . . [or] when the money is collected to satisfy a debt" and dismissing the plaintiff's conversion claim based upon "the defendants' refusal to pay proceeds on plaintiff's claim under the insurance contract"); *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 860 A.2d 1038, 1043-44 (Pa. Super. Ct. 2004) ("[P]roceeds from an insurance policy are an improper subject of a conversion claim."). Accordingly, Plaintiff's claim for conversion will be dismissed, with prejudice.

  **C. Fraud (Count II)**

  Under Pennsylvania law, which governs this matter, the elements of fraud are: (1) a representation; (2) which is material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into

7

relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance. *McWreath v. Range Res. - Appalachia, LLC*, 81 F. Supp. 3d 448, 470 (W.D. Pa. 2015), *aff'd*, 645. App'x 190 (3d Cir. 2016); *see also Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 969 (E.D. Pa. 2015). A victim of fraud may rescind the contract or affirm the contract and sue for damages. *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1184 (Pa. Super. Ct. 2005).

Rule 9(b) requires plaintiffs bringing a fraud claim to "plead the who, what, when, where, why, and how: the first paragraph of any newspaper story." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F. 3d 242, 253 (3d Cir. 2009). "[P]laintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (citations and internal quotation marks omitted). "Plaintiffs may satisfy this [particularity] requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*.

Here, Plaintiff alleges that Defendant committed fraud when by "represent[ing] to Plaintiff that a) it had the right to impede the payment of the Policy proceeds to Plaintiff, and b) that it did not agree that the Subordination Agreement to be signed by Plaintiff . . . would be limited to the loan amount made by Plaintiff to AccuDoc." (Docket No. 9 at ¶ 36). With respect to the Policy's proceeds, as discussed above, the assignment expressly provides that Defendant, as an assignee, had "[t]he sole right to collect from the insurer the net proceeds of the Policy when it becomes a claim by death." (Docket No. 12-1 at ¶ A). Thus, Defendant did not commit fraud by representing that it had the right to impede the payment of the Policy's proceeds. Further, Plaintiff alleges that

she believed that Defendant had no interest in the Policy. (Docket No. 9 at ¶¶ 12, 15). Therefore, she cannot establish that she relied upon Defendant's representation. *See, e.g.*, (finding that the plaintiff had not relied on a misrepresentation and explaining that "[w]e have difficulty understanding how he can claim to have relied on a provision that explicitly allows [future premium] increases to believe that premiums would never increase"); *84 Lumber Co., L.P. v. Gregory Mortimer Builders*, No. 11-CV-548, 2017 U.S. Dist. LEXIS 25198, at *20 (W.D. Pa. Feb. 23, 2017) (noting that to recover on a claim for fraud, a plaintiff "must show, *inter alia* that she not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the injury had resulted had not such misrepresentation been made") (internal quotations omitted).

With respect to the subordination agreement, Plaintiff alleges that she disputed Defendant's position as to the scope of the subordination agreement and that Defendant later reduced the scope of the subordination agreement as originally agreed. (Docket No. 9 at ¶¶ 18-26). Again, Plaintiff cannot establish that she relied upon Defendant's statement that the subordination agreement would be limited to the loan amount made by Plaintiff to AccuDoc, as she disputed the same. Moreover, Plaintiff cannot establish that an injury occurred because she alleges that Defendant reduced the scope of the subordination agreement and that Defendant's representative offered to waive the signing of any subordination agreement by Plaintiff. (*Id.* at ¶¶ 24, 26). *See, e.g.*, *Baker v. Inter Nat'l Bank*, No. 08-CV-5668, 2012 U.S. Dist. LEXIS 6920, at *25 (D.N.J. Jan. 19, 2012) (granting motion to dismiss a fraud claim because the plaintiff "has shown no concrete injury, no ascertainable loss"). Accordingly, Plaintiff's claim for fraud will be dismissed, with prejudice.

9

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

In Pennsylvania, the duty of good faith and fair dealing "does not create independent substantive rights" and does not give rise to a cause of action separate from breach of contract. *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (citing *Commonwealth v. BASF Corp.*, No. 3127, 2001 Phila. Ct. Com. Pl. LEXIS 95, at *38 (Pa. Com. Pl. Mar. 15, 2001)); *see also Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 472 (E.D. Pa. 2011) ("Pennsylvania does not allow an independent cause of action for a breach of the implied duty to act in good faith."); *LSI Title Agency, Inc. v. Evaluation Servs.*, 951 A.2d 384, 391-92 (Pa. Super. Ct. 2008) (affirming the trial court's dismissal of a claim for breach of the implied covenant of good faith and fair dealing as an independent claim). Therefore, a claim predicated on a breach of the covenant of good faith is "'subsumed in a breach of contract claim.'" *Burton*, 707 F.3d at 432 (quoting *LSI*, 951 A.2d at 392). Thus, Plaintiff's claim must fail.

Even construing the complaint to allege a breach of contract claim cannot save Plaintiff's case. Under Pennsylvania law, a breach of contract claim has three elements: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages resulting from that breach. *Rendon v. Ragans*, No. 08-CV-1665, 2009 U.S. Dist. LEXIS 45127, at *7 (W.D. Pa. May 29, 2009) (citing *Novinger Group Inc. v. Hartford Ins., Inc.* 514 F. Supp. 2d 662, 670 (M.D. Pa. 2007)). Here, Plaintiff has not even identified what contract was breached: the parties never entered into the hotly disputed subordination agreement, and the Assignment expressly authorized the conduct at issue. As this Court recently explained, "[t]he fact that the contracts at issue expressly authorize the complained-of conduct also defeats any claims that [Defendant] breached the implied covenant of good faith and fair dealing." *Daimler v. Moehle*, No. 18-CV-165, 2018 U.S. Dist. LEXIS 126444, at *23 (W.D. Pa. July 27, 2018); *see also Creeger Brick & Bldg. Supply*

*Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 153-54 (Pa. Super. 1989) (explaining that the Supreme Court of Pennsylvania has refused to impose a duty of good faith that would alter or defeat rights that have been granted by law or contract). Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing will be dismissed, with prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. The Court also denies Plaintiff leave to amend her complaint a second time because any such amendment would be futile. *See, e.g.*, *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[A] district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss."). Therefore, Defendant's Motion to Dismiss (Docket No. [11]) is GRANTED and Plaintiff's Amended Complaint is DISMISSED, with prejudice.

An appropriate order follows.

       *s/ Nora Barry Fischer*
       Nora Barry Fischer
       United States District Judge

Date:   September 24, 2018

cc/ecf: All counsel of record